case number document 2-16-0414 for the people of the state of Illinois, and it's in Appalachian, the James Simpson defendant appellant. I'm here on behalf of the defendant appellant, Mr. Bruce Kirkland. I'm here on behalf of the defendant's attorney, Ms. Dianne Atkins. Thank you, Mr. Kirkland. On behalf of the defendant appellant, you may proceed. May it please the court and counsel. Good morning, Your Honors. Defendant appellant James Simpson raises two contentions of error in this appeal. First, Mr. Simpson's jury rating was involuntary when the state amended the indictment charging him with unlawful use of weapon by a felon, and the trial court admonished him incorrectly about the maximum sentence he could receive on the amended charge. And second, the trial court abused his discretion where the facts of this case do not support the discretionary consecutive sentences to protect the public. On the issue of the jury rating, Mr. Simpson had waived his right to a jury trial before Judge Robert Plummer at a time when he was charged with a Class III felony of UUW by a felon. The case was set for a judge trial. One week later, before a different judge, before Judge Timothy McCann, the state amended the indictment to allege a prior conviction for UUW by a felon, and that raised the charge to a Class II felon. So I think, reading the record in your briefs, there's an allegation of some misinformation that would have impacted on his decision, but I want to get one threshold issue clear. The court did admonish him about his right to plead not guilty and have a trial before a judgment jury. That was spoken of before that case actually proceeded to a bench trial, correct? Yes. After the state amended the indictment, Judge McCann went through new arraignments with Mr. Simpson. He addressed it, and Mr. Simpson said, yes, he would have a bench trial, right? Yes, but let me clarify just one quick point about that. That was one point in a series of rights that were described to the defendant. It wasn't just a stand-alone question, do you have a right to a jury or a bench trial, do you understand that? Yes, but there were several other questions. He said you have the right to plead not guilty and have a trial before a jury, or you may waive that right and have a trial by a judge. Do you understand? And he said he understood, correct? Yes. The judge never followed up on that and said, do you wish to continue with your jury waiver that was entered before a different judge one week ago that was never in reaffirmation of waiver of the right to jury on the amended charge. Didn't these charges, weren't these charges broken down for the benefit of the defendant? Yes, these charges were severed from drug cases. So he knew what they were doing, why they were severed from the drug cases, when he waived jury on the weapons charge, correct? When they talked about it on the weapons charge. I mean, yes, he was aware that those cases had been severed. I don't know how that affects his voluntariness and understanding of the waiver of the jury on the severed charges. He did have a jury trial on the drug charges. Well, let's talk about case law that says that when the judge admonishes him, as he admonished him here, that that's not sufficient for a jury waiver. Not Hernandez, correct? Hernandez is distinguishable. It is. Because in that case they added new separate charges of attrition on top of domestic battery charges. Correct. And they never discussed the waiver in Hernandez, unlike here. The issue of the jury waiver wasn't addressed at all. Correct, correct. But, you know, there's a lot of discussion and analysis of Hernandez that I think is helpful to Mr. Simpson here. How's that? Well, as I know your Honor, author of Hernandez, you pointed out that there's not a large body of law on this. You cited cases from California that said when charges are added and changed, then the prior jury waiver is invalid. That's correct. But if you get re-advised in this case, isn't this different than Hernandez and those millennia cases that I cited in Hernandez? Because he got re-advised. He was re-advised. Well, I would like to distinguish what happened in this case. When you say he was re-advised in his right to a jury trial, he was given general arraignments on the charge, which is different than asking him if he wants to persist in his jury waiver, even though the charge has changed from a Class III to a Class II. In the acquiescence cases, they talk about how proceeding to a bench trial is discussed in the presence of the defendant. That wasn't done here. The only time they talked about a bench trial was in those arraignment admonitions, and he was never asked, do you want to persist in that? They simply proceeded to the bench trial on the UUW charges. Let me watch another point. I see your position. I mean, but again, unlike in Hernandez, we've already had been called to read that it's distinguishable on the fact that in Hernandez there was no reference on the additional charge to a jury waiver. But, you know, you have a point. When I initially read this, I was a little concerned. You have some information, misinformation, admittedly given to the defendant on the consecutive issues. Do you have any cases that specifically stand for the proposition that the trial court's misinformation about the sentencing range on one of the charges automatically vitiates the admonition? I don't. I don't have a specific case that I can say controls in this case. So you'd like us to announce a new principle, apparently, right? I believe that it's warranted in this case. Mr. Simpson was told he would serve concurrent certain sentences. The maximum sentencing sentence was 14 years on the new charge. It would be concurrent to a 16-year sentence that was already imposed. He was essentially told, assured, that upon conviction, it would not increase his incarceration time. Just a second. The average person is going to say in the real world, talking very bluntly and openly, hey, if I can't get any more, what's the difference with a regular jury event? I think that's a very real possibility here. And I think that it's important to recognize, too, that the error, the misinformation, really doesn't become known until sentencing. He proceeds to bench trial under the assumption, all the way through bench trial through the finding of guilt, that he would face a concurrent 14-year maximum sentence on this. It's only after the motion for new trial is heard, the court proceeds to sentencing and imposes discretionary and consecutive sentences. Does that defect become known to Mr. Simpson? Well, how do you distinguish the Supreme Court's case and Bannister? Bannister is the case that says that sentencing considerations don't matter. Correct. The essential point is the understanding of whether you're being tried by a jury or a bench judge. Right. I mean, in this case, he chose a jury on the drug charges. He chose a bench on the weapons, which makes sense. Right. You know, it was up to a class two, but the court admonished him again regarding the jury trial. Bannister says they're unlikely to pick a bench or jury because they revised incorrectly on the sentencing. Well, I think Bannister is distinguishable on these grounds. And Bannister involved a death penalty case. And the admonitions regarding the sentence had to do with There were, like, three different contentions of error by the defendant. One of them was he was told the misadvice about the minimum on the murder case. There was confusion about the application of the 15-20-25 to life provisions. There was confusion about consecutive concurrent where murder is a mandatory consecutive. The Supreme Court says, and this is a key phrase in Bannister, The defendant does not even suggest how the completeness or correctness of the sentencing information related by the trial court would have caused him to make a different jury waiver decision. Well, would the sentence have been consecutive or concurrent? It would have been different if he picked a bench or jury? No, he'd end up in the same place. However, he got convicted. He did a jury bench, right? Sentencing rate wouldn't change. No, the concurrent and consecutive is a matter of sentencing because that's discretionary in the discretion of the trial court. On the bottom line, you're saying that if he knew there was a possibility of consecutive, he would have taken a jury trial with the prior coming in as one of the elements of the offense? I think that that's certainly a consideration. Don't we have to kind of look at the likelihood that he would do that, given the history of this case, that there had been a severance for that purpose of taking the weapons charge away from the jury? I'm not sure how the severance plays into it. I think that those are two different cases, and we have to look just at the weapons cases regarding whether that waiver was valid. So is your position that it was never valid on the Class III or it was never valid on the Class II? On the Class II. Okay. So then how do we get around the Bracey factors that would seem to indicate that there would be a valid waiver here? I mean, he was present during the discussion. He's relatively sophisticated based on his prior criminal history. He knows what's going on. He's just had a full admonishment three or four days before, and I frankly don't see a different strategy between the Class III as charged and the Class IV in terms of the defense. Allow me to point out one significant fact in this case. Sure. Before Judge Comer, when he waived his first right on the Class III, Judge Comer specifically told him, you can't change your mind. This is locked in. Do you understand that? And the defendant said yes. So not only do we have the later incorrect admonitions regarding sentencing consequences, but we have a defendant who's told, you know that you can't take this back today or a week from today, and it was exactly one week later when they had the bench trial. What's so obvious about that? I think you have to look at it from the defendant's perspective. He waived his right to a Class III charge, went to bench trial, and they amended the charge to make it a Class II at that time, misadvised him regarding the sentence by letting him believe that there were not sentencing consequences in the real world to this, and he's standing there going, I can't take this back. I have to go on. We're here today. We're ready to go to bench trial. We'll do it. Did he stop and say, let me speak to my attorney. I have a question to my attorney about whether I can take this back or anything. I mean, I'm asking you these questions because he didn't raise it. This is plain error. Yes. So we have to find first whether or not there was error. Right. So, I mean, this is kind of like, this is like Frey where he stood there sign-offing. And I want to come back to the point, and I think this is very important too, that it's not until he's actually sentenced to consecutive sentences that the error becomes known. I mean, when we say plain error, he didn't object at the time because it was a hidden defect in the admonitions at that time. He didn't raise it in his motion for new trial because he hadn't been sentenced yet. The motion for new trial was denied before they proceeded to sentence him. It's only after sentencing that this becomes known that he's at consecutive sentences. I get more time. I was told they would be concurrent. And it's entirely possible that had he known that prior to the commencement of the bench trial, he would have said hold everything. I think you've got to consider that a reasonable defendant considers those sentencing factors in spite of what Bannister says. Well, that's what I was going to ask you. Maybe we threw you off a little bit. You were going to address why Bannister didn't apply. But I'm looking at Bannister's decision and rationale when the court observed that contrary to the decision whether to plead guilty, for which the trial court must have asked the defendant about passable sentences, the decision to waive a jury trial is unlikely to be affected by misinformation about the passable sentence. This is because the defendant who pleads not guilty receives a court or a fair trial and either a jury trial or a bench trial in either way. So Bannister seems to be opining that, yes, given the fact that there may in fact be misinformation, it's not such that it's likely to be affecting the defendant's decision. So how do we get around that language when this is the Illinois Supreme Court making that observation? Well, I think there's additional language in Bannister that distinguishes Bannister from our case. It says, the court I read earlier, the defendant doesn't even suggest how, now paraphrasing, the mistaken sentencing information would have caused him to make a different jury decision waiver. Quote, again, we fail to see how such information could have had any bearing on his jury waiver. In this case, I'm offering to the court an explanation of how it affected his decision. He believed that there were no sentencing consequences as a practical matter in terms of how much time he was going to be in prison. Those factors, that situation is not present in Bannister. In Bannister, the Supreme Court says it just couldn't have made a difference. Here, it could have made a difference, and it's distinguishable on that basis. I'm happy to answer any more questions on the jury waiver question. I know I still have a little time, and I would like to briefly address the sentencing issue. These are discretionary sentencing under Section 5-A-4C. If it's in the opinion of the court that consecutive sentences are required to protect the public, He made a record, I would think. Don't you agree that the court made a record with respect to consecutive sentences? Yes, and his record, his basic point is that Mr. Simpson was selling guns and drugs at the same time. And I would just like to ask this court to review the circumstances and what was going on with this gun sale. He was selling drugs to a state police officer who brought up the subject, Can you sell me a gun? Which, while probably not entrapment, certainly is enticement. The defendant agrees to do so. There's a series of text messages going back and forth. Yet he doesn't bring a gun, but then when you do the search, they find a couple of guns, right? They find a couple of guns. They find nine millimeters in a safe, in a closet, in his home. He did not, there's no evidence in the record that, I know my time's up, I guess I should briefly conclude. There's no evidence that he ever had any weapons at any of these drug transactions. There were two prior sales. He was arrested the third time he showed up. The third time he had no guns or drugs. There's no indication that he ever procured a gun. It's entirely possible that he's reading, he's playing this back and forth game with this officer, regarding are we going to get a hotel room, that kind of stuff. That's a pretty thin line of facts to base a discretionary consecutive sentence on here. This guy's not Al Capone. This is not protecting the public from, you know, public enemy number one. I would just ask the court to look at the facts of the gun sale and what was going on there and find that it was an abusive discretion to administer consecutive sentences in this case. All right, thank you. Ms. Kimball on behalf of the people. Good morning, Your Honors. I agree with your assessment of Bannister. That should be controlling. It separates the jury waiver from the sentencing. The court's holding is that the pivotal knowledge when a defendant waives his right to a jury trial is the defendant understand that the facts of the case will be determined by the judge, not the jury. Didn't he just allude to there's an additional factor here that wasn't present in Bannister? How do you respond to that? A little side note. Bannister was recently, that holding in Bannister was also cited by the Gatlin Court and Church in 2017, so that's been recently affirmed. In this case, I'm sorry, can you repeat the question? He finished his argument saying that the facts of this case are distinguishable. There's a different situation here. Okay, not shockingly, I disagree with that. In this case, it's a complex history. Defendant has four ongoing cases. One of your honors noted that the first case was a jury trial. These charges were severed from that so that these charges would not go before that jury in that controlled substance case. Right, we know that. So it's a logical strategy then the defendant would pursue the strategy of having a judge determine these cases. In the whole context of things, there was a long period of delay, and then defendant switches counsel, and when that new counsel gets up to speed, things progress more rapidly. So the defendant has his jury trial. At the time that he had his jury trial, was he aware that he may be sentenced to consecutive sentences, and does that now? He was not aware of it, was he? The discussion was that some cases were bond-on-bond, and when Judge McCann, when he's re-advising the defendant in the bench trial, notes that they had a discussion on whether this is consecutive, and they're clearly referring to the bond-on-bond mandatory consecutive as he'd had in the priors. It's not disingenuous, I think is the phrase that opposing counsel used for the ASA then to suggest that permissive consecutive sentencing would be appropriate in this case. Wait a minute, he doesn't say that before the bench trial. He says that at sentencing. I'm sorry. You can sort of dive into the question. Did the court give him misinformation when he was arraigned on the new set of charges? Yes or no? It doesn't have. Well, yeah, first answer yes or no. That's critical. He does say that these will be concurrent with the others. Which is not correct. Can we agree on that? In the context of they're talking about mandatory consecutive. Of course. Oh, it was consecutive. Mandatory discretionary. I'm telling you at an arraignment, here's the possible penalties, and I leave out that thing about consecutive sentences. So basically he's told this one's on the house. Because even if I give you the max, you're already doing 16. So your position is that that's not even an error? That is an incorrect statement that he would be entirely precluded from consecutive. Right, that's what I wanted to establish. It was an incorrect statement. Right. Good. It does not matter in this case. Why not? Your honors have pointed out that the sentencing factors are going to be determined regardless of whether it is a jury or a bench. In this case, under the permissive consecutive sentencing statute, it says that it is based not only on the defendant's history and character, but on the nature and circumstances of the offense. You are not going to determine for the permissive sentencing to protect the public from further criminal acts of the defendant the nature and circumstances of the offense until after the trial. So you don't know until after the trial if permissive consecutive sentencing would be appropriate. It's not a matter of whether it's appropriate. It's a matter of whether it was a possibility, and it was a possibility to this defendant from the get-go. How do we overlook that? I think you can also look at other factors that indicate that, regardless, the defendant would have stuck with his selection of a bench trial, particularly by Judge McCann. The perpetuities of Judge McCann are not in this record. I think the defendant's favorable viewing of his relationship with Judge McCann is apparent in the record. But didn't he waive in front of Plummer? He did. He did in front of McCann, though. Right. What happened was, due to scheduling, it went in front of Judge Pilner for the jury waiver. And that was fully done. It was clear it was voluntary. And at the end of that, they're talking about scheduling the bench trial next week. And the ASA notes that there are motions, including the motion to amend the charges, and it will be more efficient for the judge hearing the bench trial next week to hear those motions. And in a previous schedule meeting, I think this is at 276, Judge McCann had indicated that in the jury trial week, he won't be available for the first part so somebody else, some other judge who turns out to be Judge Pilner, can hear the jury waiver, and then he'll be available in the latter half of the week. So they schedule the bench trial for a Thursday when they know Judge McCann will be available. He had done both of the defendants' guilty pleas, so he has a good working relationship. And apparently defense comes with defense. Well, how do we know this? I need to get him checked. This is sort of Dior's record, so to speak. Do we know he has a good working relationship with Judge McCann? I think it's evident from their maneuver to get the bench trial in front of Judge McCann. Okay. Let me ask you, Larry. You're suggesting that defense counsel manipulated the system. No, no. But that's the inference from your statement. I mean, there's nothing in here about Judge McCann other than when he was available, when he wasn't available. If you look at it. If you set that aside, what other factors should we look at? Okay. The defendant had had a jury trial on the controlled substance that didn't go particularly well for him since he was convicted. That was subsequently affirmed on appeal and filed a pro se PLA. That's all very more recent. But at the time, as I said, things had been slow until the new counsel gets up to speed, and then they have the jury trial. Very rapidly after that, the defendant pleads guilty to two other offenses. So the only remaining charges are the weapons charges, which he had previously severed from the jury trial on the controlled substance. So that's indicating he's going for expediency and that he, in fact, does not want these particular charges in front of a jury. And I think that that is the major distinguishing factors. There's also the fact that I think there's three factors that the court can look at, and one is whether the defendant was present during discussions of jury waiver. Do you want to talk about the Bracey factor? I think that it's in Hernandez, it's in Bracey, and it's in Prey. So he was clearly present during the discussion of the jury waiver, the defendant's level of sophistication. He clearly has extensive criminal experience. He not only has these charges, he has selected a jury trial before, so he knows that's an obvious option, and whether the amended charges call for the same strategy. Clearly here it does. The defendant has severed these charges to avoid the jury previously. He's going to stick with a bench trial. Well, Councillor Raleigh, you cited the technical factors very well, but I want to get back to the point the counsel raised in his argument. You cited the Bannister language, which talks about, yes, Bannister said the defendant pleads not guilty, receives a full or fair trial either way, but they end by saying in either way the defendant's possible sentences would be the same. In this case, it was not going to be the same. It would be the same in that jury. In that sense, but the point is— Isn't that what Bannister is saying? I don't want to question you. But here he's told something. Clearly the information was not correct. So is that not a factor to be considered? I don't think it should be in this case because it was the permissive sentencing to protect the public from further criminal conduct by the defendant, and that is based on the nature and circumstances of the offense. Those are only determined after trial. Yeah, but it's just as according to the plaintiff. He was told he couldn't get it anymore in his mind either way, correct? That would be one interpretation. I wouldn't necessarily agree with that, but I can't say that that's rational. But you also look at the fact that sentencing is at the discretion of the trial judge, and the judge made a very clear and well-reasoned conclusion why permissive sentencing was appropriate. Some of the things in the record supporting that are, aside from the felonies, whether it was appropriate or not, how does that impact the waiver? Or are you just arguing the sentencing? I can argue both. All right, but whether it was appropriate or not. Under Bannister, sentencing is separate from a jury waiver. And you pointed out the language that says even misadmonishment of a sentence does not affect that. So that's the Supreme Court holding. That was reinforced with Church and Gatlin in 2017. So we have to kind of go with that. And in this case, everything in the record supports that the defendant is going for the bench trial in this case, the whole procedural history. As I mentioned, permissive consecutive sentence or consecutive sentencing based on protection of the public is based on the facts and circumstances of the case, which can't be determined until after the trial. So that perhaps the court should not have admonished him that there was no possibility of anything further, correct? Yes, that would have been clearly better. Again, my interpretation is that in the context of the discussion, they were talking about the mandatory consecutive, which had occurred in the other cases. And that then when the court is considering the permissive, that indeed is not inappropriate, particularly with the well-reasoned basis and defendant's failure to protest or object to that at any point. He doesn't, you know, object when it's raised by the ASAE argument. He doesn't object when the court imposes it. He declines to file any motion to reconsider sentence. So he's looking at plain error. Correct. Before we have plain error, we have to find the error that occurred, correct? Yes. Let me just do a quick check. I would also like to note one holding in fray, which is in keeping with my argument about invited error, and that is the fray court says they will not permit the accused to gamble on the outcome of a judge without a jury than if dissatisfied, make a blatant demand for a jury. And I think that is exactly what happened in this case. All right. Thank you. Mr. Perkin, you may approach any button. Thank you, Roge, just very briefly. I think that one of the things we're talking about here is did he acquiesce under a change of circumstances after he waived his right to a jury when he was a Class III or he waived in front of Judge Pilmer. And I would refer, Your Honors, to page 733 of the record. This is what I was alluding to earlier where Judge Pilmer admonishes the defendant and says, You understand that if you waive your right to jury trial, you can't change your mind, whether it's tomorrow or a week from now. Yes. So we have a defendant who is affirmatively told that he can't get out of this jury waiver. Then circumstances change. He's misadmonished regarding potential sentences, told that there won't be any real-world practical. Wait. He was misadmonished after his bench trial. So it wasn't before, so you can't say he wasn't given the opportunity to withdraw that bench waiver of jury because he wasn't misadmonished until after the bench trial. I interpret the record differently, if I may, Your Honor. He had a bench trial. Right. Okay. He waived in front of Judge Pilmer. They come back a week later. The state amends to a Class 2. He's given re-agreement to Judge McKean-Briggs, and that's the point in which he is told that these will be concurrent. Right. Okay. It's not until after the trial when he's sentenced. Correct. So the circumstances change, and if the question is did he acquiesce in the bench trial, he acquiesced with the understanding, having been told he would be sentenced concurrently. Yeah, but here's the thing. Well, you started off by saying that Pilmer told him it was irrevocable under any circumstances. But then again, to find that, we have to ignore McKean's admonishment. He's clearly told him you have a right to have a trial before a judge or a jury. So the last information clearly would have overruled it initially. Correct. So what do we make of him telling us it's irrevocable when McKean started anew and told him he could have the right to a jury trial? Didn't he? Does that mean the original jury waiver from a week earlier was found to be revoked? Good question. I'm assuming you're looking at it. In some cases, did counsel or the defendant ever ask any questions to clarify anything when he's told he has the right to make his own choice now for a judge or a jury? Does anybody speak up and question anything? It's the duty of the trial court to ensure that a jury waiver is knowing and volunteering and understanding. Yes, but how would McKean know what Pilmer told him? We don't, but regardless of what Pilmer told him, if McKean tells him you have a right to a jury trial, and if we, for the sake of discussion, say that that revoked the prior jury waiver, then the trial court erred by not obtaining a jury waiver. Do you have to have a written jury waiver? No, I think there's cases that say... No, you don't. Correct. And you can have it with us. Right. I understand that standing silent, but in this case, we've got a defendant who was told irrevocable, told that there are no sentencing consequences. So under those circumstances, this Court should not find acquiescence. If there are no other questions, I'd ask this Court to reverse the judgment below, amend for a new trial in the alternative, and write a modification of the judgment ordering concurrent sentences. Thank you, Your Honor. All right. Thank you, Mr. Perkins. All right. Thank you for your arguments in this case here this morning. The matter will, of course, be taken under advisement of a written decision.